**In re FOUNDATION FOR NEW ERA PHILANTHROPY LITIGATION.**

MDL 1127.
Civil Action Nos. 96–7035, 96–3554, 96–4271.

United States District Court,
E.D. Pennsylvania.

Aug. 13, 1997.

---

Harold E. Kohn, Robert D. Greenbaum, Kohn, Swift & Graf, P.C., Philadelphia, PA, for Arlin M. Adams and the Settlement Class.

John Benjamin Carroll, Woodruff Carroll, John Benjamin Carroll, P.C., Syracuse, NY, for Syracuse Plaintiffs and the Settlement Class.

David H. Marion, Jeremy Mishkin, Montgomery, McCracken, Walker & Rhoads, L.L.P., Barbara Mather, J. Gregg Miller, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Houghton Plaintiffs.

William H. Eastburn, III, David L. Marshall, Eastburn and Gray, P.C., Doylestown, PA, for George Bennett, Senior.

Lawrence Byrne, Gibson, Dunn & Crutcher, New York, NY, Gary D. Wilson, Philip D. Anker, Wilmer, Cutler & Pickering, Washington, DC, for Prudential Securities, Incorporated.

## MEMORANDUM

DALZELL, District Judge.

The parties in this multidistrict litigation have moved for approval of a proposed settlement agreement resolving these cases, which arose out of the collapse of the ill-fated Foundation for New Era Philanthropy ("New Era").

Plaintiffs Rescue Mission Alliance of Syracuse, Inc., Sacred Works, Inc., and Wesley Skinner (collectively, the "Class Representatives") and defendant Prudential Securities Incorporated ("PSI") in Civil Action No. 96–7035 (the "Action"), together with other parties in litigation against PSI also concerning New Era, on June 9, 1997 entered into a settlement agreement that memorializes an agreement reached in principle in November of 1996.[1] We shall in this Memorandum, and in our Order and Final Judgment, adopt through our use of capitalized terms the meanings ascribed to those terms in the Settlement Agreement filed of record.

The Class Representatives filed the Action on behalf of a class of claimants, and the proposed settlement embodied in the Settlement Agreement (the "Settlement") contemplates certification of a mandatory settlement class. Accordingly, the Class Settlement Parties have filed a motion for (1) final approval of the Settlement, (2) final certification of the mandatory Settlement Class, (3) a declaration that the Class Settlement Notice

---

1. The document is entitled "Settlement Agreement and Release By and Among Arlin M. Adams, Trustee; Houghton College Plaintiffs; Syracuse Plaintiffs; George Bennett, Sr.; Prudential Securities Incorporated; and Stuart Bianchi" (the "Settlement Agreement"). The Settlement Agreement by its terms also resolves two appeals from Orders of the Bankruptcy Court, styled *Rescue Mission Alliance, et al. v. Kanaga, et al.*, C.A. No. 96–6457, and *Prudential Securities, Inc. v. Arlin M. Adams, Trustee*, C.A. No. 96–6458.

was fair, reasonable and adequate under the circumstances, and (4) dismissal with prejudice of the Action.

On August 12, 1997, we held a hearing, after notice to all members of the Settlement Class, regarding the motion. We have carefully reviewed and considered the motion and supporting documents, including the uncontested declaration of Robert D. Greenbaum ("Greenbaum Decl."). It is important to note that no objections have been filed or voiced to the Settlement Agreement or to the certification of the Settlement Class as a Mandatory Class, either with this Court or with the United States Bankruptcy Court for the Eastern District of Pennsylvania ("Bankruptcy Court"), which is presiding over the bankruptcy case of New Era under Chapter 7 of the United States Bankruptcy Code (the "Bankruptcy Case") and has jurisdiction over certain aspects of this settlement.

On July 24, 1997, Judge Bruce Fox of the Bankruptcy Court held an evidentiary hearing concerning the motion to approve the Settlement Agreement and approved the Settlement Agreement.[2] Judge Fox was required to examine the Settlement in light of many of the same standards we must apply. *See In re Martin,* 91 F.3d 389, 393 (3d Cir.1996). Judge Fox found that the Trustee had appropriately exercised his fiduciary duties to all the creditors in the Bankruptcy Case, and that the Settlement was within the range of reasonableness from the standpoint of the Bankruptcy Estate as *Martin* requires, 91 F.3d at 394. *See* Judge Fox's Order of July 29, 1997 in the Bankruptcy Case, which is now final. The creditors of the Bankruptcy Estate in the Bankruptcy Case include members of the Settlement Class.

The Settlement Agreement provides for the class settlement proceeds to be distributed through the Bankruptcy Estate in an equitable manner based on (a) the extent to which members of the Settlement Class have allowed claims in the Bankruptcy Case, (b) the priorities established by law under the Bankruptcy Code, and (c) the previous-

ly-negotiated agreement of most members of the Settlement Class with respect to claims in the Bankruptcy Case as reflected in the Group Settlement. All injured parties thus enjoy an opportunity to obtain a fair, reasonable recovery without the confusion, inconsistency, expense, delay and potential for unfairness presented in fragmented or individualized settlement discussions and negotiations, or in continued individualized litigation.

Although the Supreme Court in *Amchem Products, Inc. v. Windsor,* —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), recently rejected the settlement class in that case, the principles announced therein support certification of the mandatory Settlement Class here. Among other things, *Amchem* clarified Third Circuit precedent to the extent those decisions suggested that the requirements for class certification must be analyzed without taking into account the proposed settlement. The Supreme Court in *Amchem* instead held that "settlement is relevant to a class certification", Op. at ——, 117 S.Ct. at 2247, for the reason that amicable resolution means "there [will] be no trial", *id.*. The absence of a trial obviates the need to canvass trial management issues under Fed. R.Civ.P. 23(b)(3)(D), which would have been a concern here given the wide variety of contact, or lack of it, with PSI by individual Settlement Class members.

In *Amchem,* the Supreme Court determined that a proposed opt-out settlement class involving current and future personal injury claims did not satisfy the requirements of Rule 23. That class included claimants who had manifested numerous varying forms of asbestos-related injury, as well as people who had not yet manifested any injuries at all ("exposure-only future claimants"). The named *Amchem* representatives included no such exposure-only future claimants and there were no proposed subclasses. Most importantly, the proposed settlement provided less favorable economic terms to exposure-only future claimants than to present claimants, and a number of class mem-

---

**2.** *See* the sixty-five page transcript of the July 24, 1997 hearing before Judge Fox in *In Re: Foundation for New Era,* Nos. 95–13729 and 97–0237

(Bankr.Ct.E.D.Pa.), which documents the detailed scrutiny this Settlement received before the Bankruptcy Court.

bers objected to the proposed settlement and class certification. The Supreme Court expressed great concern with the inescapable reality that notice could not effectually be given to the exposure-only future claimants. *Amchem,* at —— – ——, 117 S.Ct. at 2249–52.

**⬛** None of these concerns applies here. Indeed, these same factors support certification of this Settlement Class. Unlike *Amchem,* the claims here are exclusively for economic injury, as a result of money lost through New Era's alleged operation of a Ponzi scheme. Moreover, the amended class complaint alleges securities fraud, a type of claim that *Amchem* noted "readily met" the requirement for predominance of common questions. *Amchem,* at ——, 117 S.Ct. at 2250.

Class counsel here implemented an all-encompassing notice program. In fact, the notice provided went beyond the requirements of our preliminary order and included notice not only by individual mail and publication in *The Chronicle of Philanthropy* (whose most recently reported circulation is to 38,016 of the relevant community), but also published notice in *The Wall Street Journal* (circulation 1,841,188)[3]. This Settlement Class does not include any future claimants, and no concerns are implicated regarding the adequacy of notice to a class of future claimants.

**⬛** We have carefully considered the factors our Court of Appeals enunciated in *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.

1975) and *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768 (3d Cir.), *cert. denied sub nom. General Motors Corp. v. French,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995). We entertain no doubt whatever that the Settlement Agreement, and the process that led to it, amply satisfy the standards and requirements of Fed.R.Civ.P. 23 for final certification of the Settlement Class and final approval of the Settlement Agreement, to wit:

(1) The complexity, expense and likely duration of the litigation;

(2) The stage of the proceedings and the amount of discovery completed;

(3) The risks of litigation (in terms of establishing liability, establishing damages and maintaining a class action);

(4) The resources of the defendant;

(5) The reasonableness of the settlement in light of the best possible recovery given the totality of the circumstances;

(6) Whether the settlement is fair and reasonable to the unnamed class members; and

(7) All objections to the settlement.

We take special note of the extensive discovery the plaintiffs took in this litigation, by highly-skilled and experienced counsel. We have also reviewed not only the pleadings and the various motions and briefs, but also the lengthy memoranda PSI, the Trustee and the Houghton College Plaintiffs submitted to

---

**3.** The Class Settlement Notice fully satisfied the requirements of Fed.R.Civ.P. 23(e) and due process. It provided notice to the Settlement Class of, among other things, the pendency of these Actions, the proposed settlement, and the releases provided for in the Settlement Agreement. The notice provided was the best practicable under the circumstances and included individual notice by first class mail to all members of the Settlement Class ("Mail Notice") that could be identified by the Trustee and Settlement Class Counsel (Syracuse Plaintiffs Counsel and Trustee Special Litigation Counsel) through reasonable efforts, including persons and entities who filed proofs of claim in the Bankruptcy Case and Negatives, Positives and Donors as identified by the Trustee, and publication of notice in *The Chronicle of Philanthropy,* a trade journal of wide circulation in the charitable community, and *The Wall*

*Street Journal* ("Publication Notice"). To the extent that the Trustee and Settlement Class Counsel were unable to provide Mail Notice to any member of the Settlement Class, including without limitation those persons and entities noted on Exhibit 6 to the Greenbaum Decl. for whom the Trustee could not obtain valid addresses despite diligent efforts, we find and conclude that the Publication Notice provided was sufficient and adequate.

Similarly, we find and conclude that the Publication Notice, together with the sending by the Trustee's Special Litigation Counsel by overnight courier of the Mail Notice to the handful of members of the Settlement Class listed on Exhibit 7 to the Greenbaum Decl. that, by inadvertence, had not been included on the prior service list for the Mail Notice was sufficient and adequate.

us in connection with the settlement negotiations conducted under our auspices. As a result of these extensive and protracted interactions, we have become fully versed in the unusually complex issues presented in this litigation.

This litigation and the Bankruptcy Case have been marked by vigorous advocacy of all claims and defenses by counsel of the highest calibre.[4] As stated in the Settlement Agreement, PSI and Bianchi continue to deny any liability to any of the plaintiffs, under any theory. While the plaintiffs believe they would ultimately have prevailed, both sides recognize that there are abundant factual and especially legal uncertainties in this litigation, and trying this matter would have required significant time, resources and expense to all concerned. It has never escaped our attention that most of the members of the Settlement Class perform charitable work, and many need to recover their losses as promptly as possible in order to continue to pursue their missions. Indeed, delay alone would lead to the extinction of many of the charities in the Settlement Class.

The Settlement is without question in everyone's best interests because it brings finality to this highly complex matter—to say nothing of affording charities who lost money an ultimate recovery of at least eighty-five cents on the dollar[5], perhaps an unprecedented result for victims of a Ponzi scheme. The agreement permits the settlement funds, and other recoveries, to be remitted quickly to these victims. This relatively prompt but thoroughly-considered settlement permits the members of the Settlement Class to turn their full attention to their charitable and other non-profit work for the communities they serve.

We have also considered each of the requirements for certification of a class under Fed.R.Civ.P. 23(a) and 23(b)(1). As it would seem that there is no question regarding the satisfaction of the Rule 23(a)(1)-(3) requirements of numerosity, commonality and typicality (see pp. 16–19 of the parties' Joint Memorandum of Law in Support of the Motion, which persuasively canvass these issues), we pause only to say a few words about the adequacy of representation and the superiority of the class device in this litigation.

Fed.R.Civ.P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequate representation will be found if plaintiffs are represented by able and experienced counsel (hardly an issue here), and that those plaintiffs have no fundamental conflicts of interest with the legitimate interests of the class as a whole. See, e.g., Amchem, at ————— & n. 20, 117 S.Ct. at 2250–51. None of the plaintiffs here have interests antagonistic to the legitimate interests of the Settlement Class as a whole.

It is at this point important to stress the significance of the participation of the Trustee of the Chapter 7 Estate, Judge Arlin M. Adams. Judge Adams, a fiduciary for all New Era creditors, participated at arm's length as a party in the negotiations that led to the Settlement Agreement. See In Re: Martin, supra, 91 F.3d at 394. Indeed, Judge Adams's role was central to the achievement of this excellent result. His active involvement in this process, drawing upon his complete command of the intricacies of this bankruptcy, assured that no interest in the New Era Estate was ignored, and that all interests were justly served.

We also find that the certification of a mandatory Settlement Class is here a superior means of resolving this litigation. It is significant to observe in this regard that the Settlement Agreement provides for the New Era Fund to be distributed through the Bankruptcy Estate in an equitable manner

---

4. Although the adage about success having many fathers applies here, we wish to make special note of the extraordinarily high levels of lawyering consistently demonstrated by the Trustee's Special Counsel, Harold E. Kohn, Esq. and Robert D. Greenbaum, Esq., and PSI's counsel, Gary D. Wilson, Esq.

5. It should be noted that the Settlement with PSI will itself permit distribution to the Settlement Class members approximately 15% of their net loss claims, and, together with other assets of the Bankruptcy Estate, these members will sooner rather than much later enjoy a total recovery in excess of 85% of their net loss claims.

based on the extent to which members of the Settlement Class have allowed claims in the Chapter 7 proceedings. The ultimate distribution will thus be in accordance with the priorities established under the Bankruptcy Code and the previously-negotiated agreement with many of the members of the Settlement Class, which Judge Fox approved, with respect to the Group Settlement in the Bankruptcy Case.[6] This Settlement therefore affords all affected class members with an opportunity to liquidate and receive a fair, reasonable recovery, as well as provides PSI with class-wide relief and relief from competing claims.

In sum, the rights of class members have now been doubly scrutinized under the protections of Rule 23 and of the Bankruptcy Code. *Amchem's* demand for "undiluted, even heightened, attention in the settlement context", Op. at ——, 117 S.Ct. at 2248, has been amply met here.

Based on the foregoing and all the pleadings, other papers and proceedings in this litigation, we will approve the Settlement. An Order accomplishing this follows.

### *ORDER AND FINAL JUDGMENT*

AND NOW, this 13th day of August, 1997, upon consideration of the joint motion for final certification of settlement class, final approval of settlement determination that notice has been adequate, and dismissal, and the joint memorandum of law submitted in support thereof, and the declaration of Robert D. Greenbaum in support of the joint motion, and, after a hearing yesterday at which no objection was made to the granting of the motion, or approval of the settlement, and for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that:

1. This Court has jurisdiction over the subject matter of these Actions and over all the parties to the Actions, including all members of the Settlement Class;

2. The Motion is GRANTED in all respects;

3. This Court finds and concludes that (a) due and adequate notice of the Actions, the Settlement Agreement, and the Class Settlement has been provided to the Settlement Class pursuant to Fed.R.Civ.P. 23(e), and (b) all members of the Settlement Class are bound by this Order and Final Judgment;

4. For purposes of this Order and Final Judgement, a Settlement Class is certified, on a mandatory basis, pursuant to Fed. R.Civ.P. 23(b)(1) and (c), as follows:

each person, charity, foundation or other entity which at any time participated in any Foundation for New Era Philanthropy program (including, without limitation, the New Concepts in Philanthropy Fund) and which at any time deposited, transferred, placed and/or received any funds, securities, and/or other property, directly or indirectly, with, to and/or from New Era, including, without limitation, all Positives, Negatives, and Donors (as those terms are used in the Settlement Agreement), but excluding New Era, its officers, directors, employees, agents, lawyers, accountants, and financial advisors and Prudential Securities Incorporated, its parents, subsidiaries, corporate affiliates, officers, directors, employees, lawyers and agents.

5. For purposes of this Order and Final Judgment, and in light of the classwide relief provided in the Settlement Agreement with respect to the Settlement Class, the Court finds and concludes that the prerequisites to a class action under Fed.R.Civ.P. 23(b)(1) have been satisfied for settlement purposes in that:

(a) the Settlement Class, exceeding several hundred individuals and entities, is so numerous that the joinder of all members thereof is impracticable;

(b) there are questions of law or fact common to members of the Settlement Class;

(c) the claims of the Class Representatives are typical of the claims of the members of the Settlement Class;

(d) in negotiating and entering into the Settlement Agreement, the Class Representatives and the Settlement Class Counsel

---

6. As stated in note 1, *supra,* the Settlement resolves the two appeals lodged to Judge Fox's September, 1996, approval of the Group Settlement.

have fairly and adequately represented the interests of the Settlement Class; and

(e) although not necessary for a settlement class under 23(b)(1), the Court also finds: (1) the questions of law or fact common to members of the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and (2) a class action is superior to all other available methods for the fair and efficient resolution of this controversy pursuant to this settlement;

6. The Settlement Class is certified as a mandatory, non-opt out class pursuant to Fed.R.Civ.P. 23(b)(1), based upon the Court's findings and conclusions as set forth herein and in the accompanying Memorandum. The Settlement Agreement provides for PSI to make a settlement payment of $15.9 million to the Bankruptcy Estate ("PSI Estate Payment"), for the benefit of creditors of New Era, including members of the Settlement Class. Such members with allowed unsubordinated claims in the Bankruptcy Case would be able to share in distributions from the Bankruptcy Estate resulting from the PSI Estate Payment even if they were permitted to and did opt out of the Settlement Class. As a practical matter since the PSI Estate Payment will be distributed by the Trustee through the Bankruptcy Estate to all persons and entities with allowed unsubordinated, non-trade claims against New Era in the Bankruptcy Case, the distribution is tantamount to payment on a mandatory class basis. Furthermore, each dollar of the PSI Estate Payment distributed by the Bankruptcy Estate will have the practical effect of reducing the claims by members of the Settlement Class against PSI. For the reason further amplified in the papers submitted in support of the Motion, certification of a mandatory class is appropriate because, within the meaning of Fed.R.Civ.P. 23(b)(1)(B), the prosecution of separate actions by individual class members against PSI would create a risk that adjudication with respect to such class members would substantially impair or impede the ability of other class members to protect their interests;

7. The Court finds and concludes that the Class Representatives (and Settlement Class Counsel) and PSI, together with the other parties (and their counsel) to the Settlement Agreement, have negotiated the proposed settlement non-collusively and in good faith, and that its terms are fair, reasonable and adequate to, and in the best interests of all members of, the Settlement Class; accordingly, the proposed Settlement Agreement is, in all respects, APPROVED under Fed. R.Civ.P. 23(e) and incorporated by reference as part of this Order and Final Judgment;

8. Upon the Effective Date:

(a) Each and every Class Representative and other member of the Settlement Class, for itself and its successors, assigns, personal representatives, heirs, attorneys, shareholders, directors, officers, and agents (collectively, the "Settlement Class Member Parties"), shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully remised, released, and forever discharged PSI, and its successors, assigns, personal representatives, heirs, attorneys, and current and former employees, directors, officers, shareholders, parents, subsidiaries, corporate affiliates, and agents (collectively, the "PSI Released Parties") of and from any and all manner of actions, causes of actions, suits, debts, accounts, bonds, covenants, contracts, agreements, judgments, claims, demands, levies, executions, obligations, and setoffs of any nature whatsoever, in law or equity, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, direct or indirect, which such Settlement Class Member Parties or any of them ever had, now have, or hereafter can, shall, or may have for, or by reason of, any cause, matter, or thing whatsoever from the beginning of the world to the date of the Settlement Agreement in connection with, relating to, or arising out of New Era; the Program or any other programs operated by New Era; the deposit, transfer, placing, or receipt of any funds, securities, or other property, directly or indirectly, by any person or entity with, to, or from New Era; and/or the Bankruptcy Case, the Bankruptcy Estate, and the Litigation (collectively, the "Released Class Member Claims"), including

without limitation any claims that any Settlement Class member has asserted, could have asserted, or could assert (or that have been, could have been, or could be asserted on behalf of any Settlement Class member) in the Action, whether or not such Settlement Class member has filed a proof of claim in the Bankruptcy Case and/or will receive distributions in the Bankruptcy Case;

(b) Except as provided in Section 7 of the Settlement Agreement, PSI, for itself and its successors, assigns personal representatives, heirs, attorneys, shareholders, directors, officers, and agents (collectively, the "PSI Parties"), shall be deemed to have, and by operation of the Final Judgment shall have, fully remised, released and forever discharged each Settlement Class member and its successors, assigns, personal representatives, heirs, attorneys, and current and former employees, directors, officers, shareholders, parents, subsidiaries, corporate affiliates, and agents of and from any and all manner of actions, causes of actions, suits, debts, accounts, bonds, covenants, contracts, agreements, judgments, claims, demands, levies, executions, obligations, and setoffs of any nature whatsoever, in law or equity, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, fixed or contingent, direct or indirect, which such PSI Parties or any of them ever had, now have, or hereafter can, shall, or may have for, or by reason of, any cause, matter, or thing whatsoever from the beginning of the world to the date of the Settlement Agreement in connection with, relating to, or arising out of New Era; the Program or any other programs operated by New Era; the deposit, transfer, placing, or receipt of any funds, securities, or other property, directly or indirectly, by any person or entity with, to, or from New Era; and/or the Bankruptcy Case, the Bankruptcy Estate, and the Litigation, including without limitation any claims that PSI has asserted, could have asserted, or could assert in the Action;

9. Conditioned upon the occurrence of the Effective Date, the Class Representatives and all other Settlement Class Member Parties, and all persons or entities in privity with any of them or acting in concert or participation with them, either directly, indirectly, representatively, or in any other capacity, are hereby forever and permanently RESTRAINED AND ENJOINED from prosecuting, pursuing, litigating or otherwise asserting any of the Released Class Member Claims against any of the PSI Released Parties in this or any other forum;

10. The additional releases provided in the Settlement Agreement (including the releases by PSI, Bianchi, the Trustee, the Houghton College Plaintiffs, the Syracuse Plaintiffs, and Bennett) are hereby APPROVED and shall be enforceable in accordance with their terms;

11. Upon the Effective Date, all claims of the Class Representatives and the Settlement Class that were asserted against PSI or Bianchi in the Action and in the other matters consolidated before this Court under docket number MDL 1127, are hereby DISMISSED on the merits WITH PREJUDICE, with each party to bear its own costs except as expressly provided for in the Settlement Agreement;

12. Except as expressly set forth in the Settlement Agreement, PSI shall have no obligation for attorneys' fees, costs, or expenses of Settlement Class Counsel, including without limitation costs and expenses of administering and distributing the Escrow Accounts;

13. The Escrow Accounts are hereby APPROVED, and the date of entry of this Order and Final Judgment shall be the Court Approval Date under the Settlement Agreement;

14. If, for any reason, a Failure Condition shall occur, the Settlement Agreement and this Order and Final Judgment shall be null and void, of no further force or effect, and without prejudice to any party, and may not be introduced as evidence or referred to in any actions or proceedings by any person or entity, and each such party shall be restored to his, her or its respective position as it existed prior to the execution of the Settlement Agreement;

15. Without affecting the finality of this Order and Final Judgment in any way, this Court hereby retains continuing jurisdiction

over (a) the implementation, enforcement, and performance of the Settlement Agreement as set forth therein, (b) the enforcement of the terms of this Order and Final Judgment, (c) the Escrow Accounts, and (d) all parties hereto (including all Settlement Class Member Parties) for purposes of implementing and enforcing the Settlement Agreement and this Order and Final Judgment; and

16. There is no just reason for delay and therefore, pursuant to Fed.R.Civ.P. 54(b), the Clerk of the Court is hereby DIRECTED to enter this Order and Final Judgment of Dismissal.